IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KARSTEN O. ALLEN, )  | |
|     Plaintiff, ) | Case No. 7:22-cv-00351 |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| SALLY GOOD, et al., ) | Chief United States District Judge |
|     Defendants. ) | |

## MEMORANDUM OPINION

Karsten O. Allen, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983, alleging that the defendants violated his rights under the Eighth Amendment. The case is presently before the court on a motion to dismiss filed by defendants Sally Good, Sergeant Widener, Officer Rose, Warden Israel Hamilton, and Harold Clarke.[1] For the reasons set forth below, the motion to dismiss, ECF No. 22, is **GRANTED IN PART AND DENIED PART**.

## Background

The following summary of the facts is taken from the complaint and the accompanying exhibit. For purposes of the motion to dismiss, the facts are presented in the light most favorable to Allen. See Washington v. Hous. Auth. of the City of Columbia, 58 F.4th 170, 177 (4th Cir. 2023) (noting that a court reviewing a motion to dismiss must "accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff").

---

[1] Another defendant, Nurse Practitioner D. Ball, has filed a motion for summary judgment. That motion will be addressed separately.

Allen's claims arise from events that occurred while he was incarcerated at Keen Mountain Correctional Center ("KMCC"). KMCC is a Virginia Department of Corrections ("VDOC") facility located in Buchanan County, Virginia. During the applicable time period, KMCC housed inmates with security levels ranging from level II to level IV. Compl., ECF No. 1, at ¶ 11. Allen was a security level IV inmate, and both level III and level IV inmates were required to be confined separately from level II inmates. Id.

At some point after being transferred to KMCC, Allen began experiencing severe pain in his shoulder and arm. Id. Test results revealed that he had a "severely damaged disc in his spine in the neck area." Id. He was subsequently scheduled for corrective surgery at VCU Medical Center ("VCU") in Richmond, Virginia. Id.

Allen alleges that Sally Good was responsible for making arrangements for him to be transported for surgery and that she was aware of the distance at which Allen would be required to travel. Id. ¶ 13; see also id. ¶ 4(a) (describing Good as "the official responsible for the transportation approval"). On June 16, 2021, Good approved a recommendation that Allen be temporarily transferred to Sussex I State Prison ("Sussex") for the "upcoming VCU . . . appointment" and that he "be returned to KMCC upon completion of [the] medical appointment." Compl. Ex. 1, ECF No. 1-1.

Allen was called for transport on the morning of June 17, 2021, and Sergeant Widener and Officer Rose were the assigned transport officers. Compl. ¶ 14. Rather than taking Allen to Sussex, the officers proceeded directly to VCU. Id. During the six and one-half hour trip, Allen requested to use the restroom, but the officers told him that he was not allowed to leave the vehicle. Id. Instead, while Allen was shackled in the vehicle at a gas station, Rose gave him

a bottle in which to urinate. Id. Unbeknownst to Allen, the bottle had a crack in it, and urine leaked on his clothes and formed a small puddle on the floor. Id. Rose gave Allen paper towels, and the officers continued the trip to Richmond. Id.

Allen underwent a two-hour surgical procedure that same day. Id. ¶ 16. Following the surgery, Allen was admitted to the hospital for observation, and the surgeon ordered that he remain in recovery overnight. Id. He was prescribed Oxycontin to be taken every four hours for pain, as well as an over-the-counter pain reliever. Id.

At approximately 4:00 p.m. on June 18, 2021, Widener and Rose returned to the recovery room to prepare Allen to be transported back to KMCC. Id. ¶ 17. The officers had a conversation with a nurse regarding Allen's prescriptions, and they acknowledged that they would be unable to administer any type of medication during transport from the hospital to KMCC. Id. Even though Allen "had not yet reached 4 hours between narcotic takes, . . . the officers proceeded to make the return trip to KMCC." Id.

After traveling for approximately two hours, the effects of the pain medication faded and Allen's pain steadily increased. Id. ¶ 18. Allen alleges that the pain became "so intense . . . that he felt he could not make it back to the institution in his condition," and he "practically begged the officers to get pain medication for him." Id. When the officers responded that they were not authorized to administer medication, Allen "urged the officers to call a DOC official to inform of an emergency." Id. The officers refused to call anyone, and Widener told Allen that he would "have to stick it out." Id.

Over the next several hours, Allen "repeatedly pled for help," but the officers "ignored him" and refused to call a medical professional. Id. ¶ 19. Allen alleges that he "experienced

3

bouts of lightheadedness teetering on the brink of blacking out" and that his experience during the final four hours of the trip "amounted to torture." Id.

Prior to arriving at KMCC, Widener and Rose contacted the facility to announce their return. Id. ¶ 20. They then pulled into the parking lot next to their personal vehicles, where they were joined by a group of other officers. Allen alleges that the officers began discussing "trivial matters such as plans for the weekend" and that he "protested that he needed emergency medical attention." Id. Rather than being promptly removed from the vehicle, Allen was forced to sit in the parking lot for thirty to forty-five additional minutes while the officers chatted with one another. Id.

After several officers escorted Allen into the prison, an unidentified medical officer had to decide where to house him. Id. ¶ 22. The medical officer advised the other officers that Allen could not be placed in the infirmary since two Level II inmates were housed there. Allen was ultimately placed in an isolation cell that contained a "hard plastic slab in the center." Id. He "remained in the cell for the weekend with no way to elevate himself." Id. ¶ 23.

Based on these and other allegations, Allen filed this action under 42 U.S.C. § 1983 against several defendants, including Sally Good, Sergeant Widener, Officer Rose, KMCC Warden Israel Hamilton, and VDOC Director Harold Clarke (collectively, the "VDOC defendants"). His complaint asserts the following claims against these defendants:

> Claim I: Good acted with deliberate indifference to a serious medical need by ordering that Allen be returned to KMCC after his appointment at VCU.
>
> Claim II: Widener and Rose acted with deliberate indifference to a serious medial need by denying and delaying access to treatment for serious pain.

>Claim III: Hamilton acted with deliberate indifference to a serious medical need by failing to provide an infirmary or other medical accommodations that could adequately serve all inmates at the prison.
>
>Claim IV: Clarke acted with deliberate indifference to a serious medical need by maintaining a facility that houses inmates of differing security levels without providing an infirmary that can accommodate the medical needs of all inmates.
>
>Claim V: Clarke subjected Allen to cruel and unusual punishment by implementing a policy that allows inmates to be transported long distances without access to restroom facilities.

Id. ¶¶ 25–32. Allen seeks injunctive relief and monetary damages. Id. ¶¶ 33–40.

## Standard of Review

The VDOC defendants have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While a complaint does not need "detailed factual allegations," merely offering "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." Id. (alteration in original) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555, 557).

When a complaint is filed by a pro se litigant, it must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of pro se complaints are not, however, without limits." Beaudett v. City of Hampton, 775 F.2d

1274, 1278 (4th Cir. 1985). A pro se complaint "must still 'state a claim to relief that is plausible on its face.'" Sakyi v. Nationstar Mortg., LLC, 770 F. App'x 113, 113 (4th Cir 2019) (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)).

## Discussion

Allen seeks relief under 42 U.S.C. § 1983 for alleged violations of the Eighth Amendment to the United States Constitution. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018) (citing Scinto v. Stansberry, 841 F.3d 219, 236 (4th Cir. 2016)). Prison officials also have duty to provide "humane conditions of confinement." Farmer v. Brennan, 511 U.S. 835, 832 (1994). A constitutional violation occurs "[w]hen a prison official demonstrates 'deliberate indifference' to an inmate's serious medical needs," DePaola, 884 F.3d at 486, or to "conditions posing a substantial risk of serious harm," Farmer, 511 U.S. at 834.

### I. Claims of Deliberate Indifference to a Serious Medical Need

An Eighth Amendment claim of deliberate indifference to a serious medical need has two components. Jackson, 775 F.3d at 178. The plaintiff must show that he had a serious medical need, which is an objective inquiry, and that a defendant acted with deliberate indifference to that need, which is a subjective inquiry. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 209–10 (4th Cir. 2017). A medical need is sufficiently serious for purposes of the objective component "when it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a

6

doctor's attention." Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019). "The point of the objective prong of the deliberate indifference test is to limit claims to significant, as opposed to trivial, suffering." Al-Turki v. Robinson, 762 F.3d 1188, 1193 (10th Cir. 2014).

The subjective component requires an inmate to show that a defendant acted with deliberate indifference to a serious medical need. Deliberate indifference is "a higher standard for culpability than mere negligence or even civil recklessness." Jackson, 775 F.3d at 178. "In the context of a claim related to the denial of medical treatment or a delay in providing such treatment, 'a defendant acts with deliberate indifference if he had actual knowledge of the plaintiff's serious medical needs and related risks, but nevertheless disregarded them.'" Griffin v. Mortier, 837 F. App'x 166, 170 (4th Cir. 2020) (quoting Gordon, 937 F.3d at 357). A plaintiff can satisfy the subjective knowledge requirement through direct evidence of a defendant's actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence that the defendant knew of a substantial risk from the very fact that the risk was obvious. Gordon, 937 F.3d at 357.

"The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally denying or delaying medical care, or intentionally interfering with prescribed medical care." Formica v. Aylor, 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis omitted) (citing Estelle v. Gamble, 429 U.S. 97, 104–05 (1976)). When a claim of deliberate indifference is predicated on a delay in providing or obtaining medical assistance, the United States Court of Appeals for the Fourth Circuit has "ruled that there is no Eighth Amendment violation unless 'the delay results in some substantial harm to the [plaintiff,]' such as a 'marked' exacerbation of the [plaintiff's]

7

medical condition or 'frequent complaints of severe pain.'" Id. (emphasis omitted) (quoting Webb v. Hamidullah, 281 F. App'x 159, 166–67 (4th Cir. 2008)).

It is against this backdrop that the court proceeds to evaluate Allen's claims against the VDOC defendants.

### A. Sally Good

Turning first to Sally Good, it is clear from the complaint that Good's only involvement in the matter occurred the day before Allen underwent surgery at VCU, when she approved the decision to have Allen returned to KMCC upon the completion of his surgical appointment. The court agrees with the VDOC defendants that the complaint fails to state a viable claim of deliberate indifference against Good. In particular, the court concludes that Allen has not alleged sufficient facts from which the court can reasonably refer that Good "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them," as required to satisfy the subjective component. Gordon, 937 F.3d at 357. At most, the allegations suggest that Good negligently failed to foresee that Allen would be prescribed pain medication following the surgery at VCU and that the dosage schedule might not align with the hours of the return trip to the prison. As indicated above, "mere negligence . . . does not violate the eighth amendment." Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990). Consequently, the claim against Good must be dismissed.

### B. Sergeant Widener and Officer Rose

Allen claims that Sergeant Widener and Officer Rose acted with deliberate indifference by failing to adequately respond to his complaints of severe pain and requests for medical attention. As summarized above, Allen alleges that the officers knew that he had been

8

prescribed a narcotic painkiller after undergoing surgery at VCU; that they refused to request assistance when the medication wore off on the trip back to the prison; and that they continued to disregard his complaints of severe pain after they arrived at the prison and had the opportunity to obtain medical assistance. Instead, they chose to chat with other officers in the parking lot for another thirty to forty-five minutes, despite Allen's pleas for help.

In moving to dismiss the claim against Widener and Rose, the VDOC defendants first suggest that Allen's allegations describe "nothing more than mere temporary discomforts and inconveniences" that are insufficient to satisfy the objective component of a claim of deliberate indifference. Defs.' Mem. Supp Mot. Dismiss, ECF No. 23, at 9. At this stage of the proceedings, however, the court disagrees. Allen alleges that a VCU physician prescribed medication for pain, including a powerful narcotic; that he was forced to go without medication for several hours; and that the pain became so severe that he nearly passed out. Courts have held that "several hours of untreated severe pain" are sufficient to satisfy the objective component. Al-Turki, 762 F.3d at 1194; see also Krell v. Braightmeyer, 828 F. App'x 155, 159 (4th Cir. 2020) (rejecting the defendants' argument that "mere complaints of pain were insufficient to establish a constitutional violation" and holding that evidence that officers failed to provide medical care for a detainee's severe pain was "enough to prevail on a claim of deliberate indifference"); McCowan v. Morales, 945 F.3d 1276, 1291 (10th Cir. 2019) (concluding that "several hours of excruciating pain" satisfied the objective prong). "Although not every twinge of pain suffered as a result of delay in medical care is actionable" under the Eighth Amendment, the factual allegations viewed in the light most favorable to Allen describe "significant, as opposed to trivial, suffering." Al-Turki, 762 F.3d at 1193 (internal quotation

9

marks and citations omitted). Accordingly, the court concludes that the allegations are sufficient to satisfy the objective component.

Allen has also sufficiently alleged that Widener and Rose acted with deliberate indifference. Courts have held that an intentional "delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." Sharpe v. S.C. Dep't of Corr., 621 F. App'x 732, 734 (4th Cir. 2015) (quoting McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)). Courts have also recognized that "even brief, unexplained delays in treatment [for pain] may constitute deliberate indifference." Lewis v. McLean, 864 F.3d 556, 564 (7th Cir. 2017) (internal quotation marks and citations omitted) (concluding that a jury could reasonably find that defendants exhibited deliberate indifference by "delaying [an inmate's] treatment for approximately one and a half hours"); see also Mata v. Saiz, 427 F.3d 745, 755 (10th Cir. 2005) ("A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused . . . unnecessary pain . . . . Even a brief delay may be unconstitutional."). Here, Allen plausibly alleges that Widener and Rose knew that he was suffering from substantial pain on the multi-hour trip from VCU, that they intentionally disregarded his complaints even after they returned to the prison, and that the delay in obtaining medical attention unnecessarily prolonged Allen's suffering. While Widener and Rose may be able to refute these allegations on summary judgment, they are sufficient to state a claim at this stage of the proceedings. Accordingly, the motion to dismiss will be denied with respect to the claim against Widener and Rose.

### C. Warden Hamilton and Director Clarke

Allen asserts that Hamilton and Clarke acted with deliberate indifference to a serious medical need by failing to provide an infirmary or other medical accommodations at KMCC that could handle the medical needs of all inmates. The court agrees with the VDOC defendants that the complaint fails to state a plausible Eighth Amendment claim against these officials.

First, the complaint fails to state a claim against either defendant in his personal capacity. "To establish personal liability under § 1983, . . . the plaintiff must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (internal quotation marks, brackets, and citation omitted). "That is, the official's 'own individual actions' must have 'violated the Constitution.'" Id. (quoting Iqbal, 556 U.S. at 676). As applied to Allen's Eighth Amendment claims, this means that Allen "needed to plead sufficient facts to plausibly allege that [Hamilton and Clarke] knew about his serious medical condition and the risk of failing to [adequately] treat him." Langford v. Joyner, 62 F.4th 122, 125 (4th Cir. 2023).

Allen's allegations against Hamilton and Clarke do not satisfy this pleading requirement. He does not allege that Hamilton, the Warden of KMCC, or Clarke, the Director of the VDOC, knew that he was undergoing surgery, saw him after he returned from VCU, or personally declined to house him in the infirmary or provide other appropriate accommodations. And the complaint is otherwise devoid of allegations from which the court can reasonably infer that these defendants were aware of Allen's serious medical needs or the risk of failing to accommodate them. Consequently, the complaint fails to state a plausible

Eighth Amendment claim against Hamilton and Clarke in their personal capacities for deliberate indifference to serious medical needs.

The complaint also names Clarke as a defendant in his official capacity. See Compl. at 1. Whereas "[p]ersonal-capacity suits seek to impose personal liability upon a governmental official for actions he takes under color of state law," Kentucky v. Graham, 473 U.S. 159, 165 (1985), "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent," Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). In other words, "an official-capacity suit . . . is 'treated as a suit against the entity,' which must then be a 'moving force behind the deprivation.'" King, 825 F.3d at 223 (quoting Graham, 473 U.S. at 166). That is, "the entity's policy or custom must have played a part in the violation of federal law." Graham, 473 U.S. at 166 (internal quotation marks and citations omitted). "And to get past the pleading stage, a complaint's description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts." Henderson v. Harris Cnty., 51 F.4th 125, 130 (5th Cir. 2022) (internal quotation marks and citation omitted).

Allen's complaint does not contain sufficient facts to state a claim for relief against Clarke in his official capacity for deliberate indifference to a serious medical need. He has not plausibly alleged that an official policy or custom was the moving force behind the alleged failure to provide adequate medical treatment. While Allen claims that he did not receive proper care upon returning to KMCC, "[i]t is well settled that 'isolated incidents' of unconstitutional conduct . . . are not sufficient to establish a custom or practice for § 1983 purposes." Lytle v. Doyle, 326 F.3d 463, 473 (4th Cir. 2003) (quoting Carter v. Morris, 164

12

F.3d 215, 220 (4th Cir. 1999)); see also Simmons v. Corizon Health, Inc., 136 F. Supp. 3d 719, 722 (M.D.N.C. 2015) (emphasizing that "a single, isolated incident is not sufficient to establish a policy or custom of medical neglect"). For these reasons, the court concludes that the complaint also fails to state a plausible Eighth Amendment claim against Clarke in his official capacity.[2] Therefore, the motion to dismiss will be granted with respect to Claims III and IV.

## II. Claim of Inhumane Conditions of Confinement

In his final claim against the VDOC defendants, Allen asserts that Clarke violated the Eighth Amendment's prohibition of cruel and unusual punishment by maintaining a policy that allows inmates to be transported long distances without access to restroom facilities. Allen expressly declined to address this claim in response to the VDOC defendants' motion to dismiss. See Pl.'s Resp. Opp'n M. Dismiss, ECF No. 30, at 7. The court concludes that the claim is subject to dismissal under Rule 12(b)(6).

The Eighth Amendment's prohibition of cruel and unusual punishment "applies to claims by prisoners against corrections officials challenging conditions of confinement." Porter v. Clarke, 923 F.3d 348, 355 (4th Cir. 2019). However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." Johnson v. Dellatifa, 357 F.3d 539, 546 (6th Cir. 2004) (internal quotation marks and citation omitted). The Fourth Circuit has made clear that "[o]nly extreme deprivations are adequate to satisfy the objective

---

[2] The court additionally notes that any claim for damages under § 1983 against Clarke in his official capacity is barred by the Eleventh Amendment. See Fauconier v. Clarke, 966 F.3d 265, 279–80 (4th Cir. 2020).

13

component of an Eight Amendment claim regarding conditions of confinement." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). In particular, "a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions" or "demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." Id. (internal quotation marks and citation omitted). And to satisfy the subjective component, a prisoner must show that a prison official actually "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837.

Allen's claim fails at the first step. His allegations of being denied access to restroom facilities for over six hours and instead having to urinate in a bottle do not describe the type of "extreme deprivation[]" required to satisfy the objective component. De'Lonta, 330 F.3d at 634. Allen does not allege that he suffered a serious or significant injury as a result of the challenged conditions or that the conditions posed a substantial risk of serious harm. Id. When faced with similar allegations, "numerous courts . . . have held that the denial of bathroom access for a limited period of time, even when it resulted in the prisoner soiling himself, did not constitute a violation" of the Eighth Amendment. Baker v. Clarke, No. 7:20-cv-00204, 2020 WL 3422198, at *2 (W.D. Va. June 22, 2020) (collecting cases involving the alleged denial of access to restroom facilities for five or six hours).

Consistent with these decisions, the court concludes that Allen has failed to plausibly allege a violation of his Eighth Amendment rights arising from the temporary denial of access to restroom facilities. And in the absence of an underlying constitutional violation, Allen has no viable claim for relief against Clarke in his personal or official capacity. See Lytle, 326 F.3d

at 471; see also Hinkle v. City of Clarksburg, 81 F.3d 416, 420 (4th Cir. 1996). Thus, the VDOC defendants' motion will be granted as to Claim V.

## Conclusion

For the reasons set forth herein, the motion to dismiss filed by the VDOC defendants, ECF No. 22, is **GRANTED IN PART AND DENIED IN PART**. An appropriate order will be entered.

Entered: September 14, 2023

Digitally signed by Michael F. Urbanski   Chief U.S. District Judge
Date: 2023.09.14 10:30:34 -04'00'

Michael F. Urbanski
Chief United States District Judge