IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

KARSTEN O. ALLEN,       )
     Plaintiff,        )    Case No. 7:22-cv-00351
                        )
v.                     )
                        )    By: Michael F. Urbanski
SGT. WIDENER, et al.,      )    Chief United States District Judge
     Defendants.     )

## MEMORANDUM OPINION

Karsten O. Allen, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983, alleging violations of his rights under the Eighth Amendment. The case is presently before the court on a motion for summary judgment filed by Nurse Practitioner Deborah Ball. ECF No. 32. The motion has been fully briefed and is ripe for disposition.[1] See ECF Nos. 33, 37, and 40. For the reasons set forth below, the motion for summary judgment is **GRANTED**.

## Factual Background

The following facts are either undisputed or presented in the light most favorable to Allen, the nonmoving party on summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

---

[1] Allen recently filed a motion to supplement his response to the motion for summary judgment to include a verified affidavit in the event that the affidavit accompanying his response is unverified. ECF No. 41. Because the existing affidavit was signed under penalty of perjury in accordance with 28 U.S.C. § 1746, the motion to supplement will be denied as unnecessary. See 28 U.S.C. § 1746 (providing that an unsworn declaration submitted under penalty of perjury is deemed to have the same force and effect as a sworn affidavit).

Allen is an inmate in the custody of the Virginia Department of Corrections ("VDOC"). In June 2021, when the events giving rise to this action occurred, Allen was incarcerated at Keen Mountain Correctional Center ("KMCC"), where Ball worked as a nurse practitioner. During the applicable time period, KMCC housed inmates with security levels ranging from level II to level IV. Verified Compl. ("Compl."), ECF No. 1, at ¶ 11. Allen was a security level IV inmate, and both level III and level IV inmates were required to be confined separately from level II inmates. Id.

On Thursday, June 17, 2021, Allen was transported to VCU Medical Center in Richmond, Virginia, where he underwent an anterior cervical discectomy and fusion ("ACDF") surgery. Ball Aff., ECF No. 33-3, at ¶ 2; see also Def.'s Ex. 1, ECF No. 33-1, at 10. Records from VCU indicate that a cervical spine MRI had previously revealed "right-sided C5-6 disc herniation causing severe right-sided neural foraminal narrowing" and that Allen had elected to proceed with surgery. Def.'s Ex. 1 at 10.

On Friday, June 18, 2021, Allen was discharged to the care of the VDOC "following an uncomplicated hospital course." Id. At the time of discharge, Allen's condition was "stable" and "his pain was well controlled." Id. He was prescribed acetaminophen with oxycodone to be taken every four to six hours for pain. Id. at 15. His discharge instructions indicated that he "should no[t] take nonsteroidal medications to include ibuprofen/Advil, naproxen/Aleve, Celebrex or aspirin, until cleared at followup"; that he should "transition to over the counter Tylenol as his pain improves; and that he "should not perform any heavy lifting or strenuous exercise." Def.'s Ex. 1 at 8.

Upon returning to KMCC that night, several officers escorted Allen to the infirmary. Compl. ¶ 22.; see also Def.'s Ex. 2, ECF No. 33-2, at 2 (indicating that Allen arrived in the infirmary at approximately 11:30 p.m.). "The infirmary has four beds and an isolation cell for inmates who are temporarily housed in the infirmary." Ball Aff. ¶ 7. Based on Allen's security level and the fact that two Level II inmates were already housed in the infirmary, officers placed Allen in the isolation cell. Compl. ¶ 9; see also Allen Aff., ECF No. 37-2, at ¶ 5. According to the complaint, the cell contained a "hard plastic slab in the center." Compl. ¶ 22.

At approximately 12:15 a.m. on Saturday, June 19, 2021, Registered Nurse Amber Compton performed an initial assessment. Def.'s Ex. 2 at 2. Compton noted that Allen was holding his neck, that he demanded pain medication, and that he complained that the cell was "not comfortable enough for his condition." Id. at 2–3. Although Allen had been prescribed acetaminophen with oxycodone, the prison did not use that medication. Ball Supp'l Aff., ECF No. 40-1, at ¶ 6. Compton noted that she would "contact the [nurse practitioner] to get an order for pain medication." Def.'s Ex. 2 at 3. As a registered nurse, Compton was not permitted to prescribe medication herself. Ball Supp'l Aff. ¶ 6.

Compton subsequently contacted Ball at home and informed her that Allen had returned from VCU and that he was complaining of pain. Ball Aff. ¶ 5. Ball "ordered Tylenol #3, a strong opioid pain medication, to be administered up to 4 times daily, if/as needed for 3 days." Id. ¶ 6; see also id. (describing Tylenol #3 as being "equivalent to the medication ordered by VCU providers"). Compton noted that Allen "must stay in medical to receive [the]

medication" ordered by Ball. Def.'s Ex. 2 at 3; see also Ball Aff. ¶ 10 (explaining that inmates must remain in the infirmary when they receive opioid pain medications).

At approximately 12:30 a.m., Compton gave Allen one dose of the pain reliever. Def.'s Ex. 2 at 3. Allen complained to Compton about the conditions of the isolation cell and reported that he could not adequately support his neck. Allen Aff. ¶ 6. When Allen inquired about being removed from the isolation cell, Compton told him that, "per Ball's orders," he would be required to remain there until Ball returned to the prison on Monday, June 21, 2021. Id. Although Compton notified security that Allen wanted a pillow for his neck, Def.'s Ex. 2 at 3, "the security officers refused" to provide one, Allen Aff. ¶ 6.

Over the course of the weekend, Allen received additional doses of the medication ordered by Ball. Def.'s Ex. 2 at 4. He continued to request to be removed from the isolation cell on the basis that he was unable to properly support his neck. Allen Aff. ¶ 7. A nurse informed him that, "due to [his] condition and the surgery," he "could not leave the isolation cell until [he] was cleared by NP Ball." Id. Aside from the initial call from Compton, Ball received no further communications from anyone at KMCC regarding Allen. Ball Aff. ¶ 11.

Ball evaluated Allen on the morning of June 21, 2021, upon returning to work for her scheduled shift. Id. ¶ 13; see also Def.'s Ex. 2 at 4–5. Ball's examination notes indicate that the Steri-Strips over Allen's surgical site were intact and that there was no redness, edema, drainage, or sign of infection. Def.'s Ex. 2 at 4. Allen's vital signs were within normal limits, and he was able to move his upper extremities without difficulty. Id. Allen informed Ball that he "was still suffering in pain particularly due to [his] confinement in the isolation cell." Allen Aff. ¶ 8. Ball transitioned Allen from Tylenol #3 to regular Tylenol. Def.'s Ex. 2 at 5. As a

result of the medication change, Allen no longer had a medical reason to be housed in the infirmary, Ball ¶ 13, and Ball "released [him] from the isolation cell," Compl. ¶ 24.

### Procedural History

On June 29, 2022, Allen filed this action under 42 U.S.C. § 1983 against Ball and other prison officials. Allen seeks to hold Ball responsible for him being required to remain in the isolation cell for nearly 3 days. He claims that the cell did not offer "adequate accommodations for recovery after a serious surgery" and that Ball exhibited deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Compl. ¶ 29.

On January 4, 2023, Ball filed a motion for summary judgment. The motion has been fully briefed and is ripe for disposition.

### Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson, 477 U.S. at 248–49).

When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "To survive summary judgment, 'there must be evidence on which the jury could reasonably find for the [nonmovant].'" Lee v. Town of Seaboard, 863 F.3d 323, 327 (4th Cir. 2017) (alteration in

original) (quoting <u>Anderson</u>, 477 U.S. at 252). "Conclusory or speculative allegations do not suffice to oppose a properly supported motion for summary judgment, nor does a mere scintilla of evidence." <u>Matherly v. Andrews</u>, 859 F.3d 264, 280 (4th Cir. 2017) (internal quotation marks and citation omitted).

<u>Discussion</u>

"Section 1983 authorizes a plaintiff to sue for an alleged deprivation of a federal constitutional right by an official acting under color of state law." <u>Williamson v. Stirling</u>, 912 F.3d 154, 171 (4th Cir. 2018) (internal quotation marks and citations omitted). To establish personal liability in a § 1983 action, the plaintiff "must affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights." <u>Wright v. Collins</u>, 766 F.2d 841, 850 (4th Cir. 1985). "That is, the official's 'own individual actions' must have 'violated the Constitution.'" <u>Williamson</u>, 912 F.3d at 171 (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009)).

Allen claims that Ball violated the Eighth Amendment to the United States Constitution. "The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" <u>Anderson v. Kingsley</u>, 877 F.3d 539, 543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII). "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." <u>DePaola v. Clarke</u>, 884 F.3d 481, 486 (4th Cir. 2018) (citing <u>Scinto v. Stansberry</u>, 841 F.3d 219, 236 (4th Cir. 2016)). Prison officials also have duty to provide "humane conditions of confinement." <u>Farmer v. Brennan</u>, 511 U.S. 835, 832 (1994). A constitutional violation occurs "[w]hen a prison official demonstrates 'deliberate indifference'

to an inmate's serious medical needs," DePaola, 884 F.3d at 486, or to "conditions posing a substantial risk of serious harm," Farmer, 511 U.S. at 834.

To establish a violation of the Eighth Amendment, an inmate must satisfy two elements. "First, the deprivation alleged must be, objectively, sufficiently serious." Id. at 834 (internal quotation marks and citation omitted). Second, the inmate must show that the prison official acted with a "sufficiently culpable state of mind." Id. In cases challenging prison conditions or the denial of medical care, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id.; see also Estelle v. Gamble, 429 U.S. 97, 104 (1976) (concluding that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain") (internal quotation marks and citation omitted).

"An official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (quoting Farmer, 511 U.S. at 837). This is an "exacting standard" that requires more than "mere negligence or even civil recklessness." Id. (citing Estelle, 429 U.S. at 106). To rise to the level of an Eighth Amendment violation, "it is not enough that an official should have known of a risk." Id. Rather, the official "must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Id. "The subjective component therefore sets a particularly high bar to recovery." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

Against this backdrop, the court concludes that Ball is entitled to summary judgment. Even assuming that Allen's post-operative medical needs were sufficiently serious to satisfy

the objective component of an Eighth Amendment claim, he has not presented evidence from which a reasonable jury could find that Ball acted with deliberate indifference to his serious medical needs.

The record reflects that officers placed Allen in the infirmary's isolation cell because of his security level and that Allen was required to remain in the infirmary in order to receive the opioid pain reliever prescribed by Ball. Notably, there is no direct evidence indicating that Ball specifically ordered that Allen be confined in the isolation cell over the weekend as opposed to simply ordering that he remain in the infirmary until she returned on Monday. [2] Nonetheless, even if Allen remained in the isolation cell "per Ball's orders," Allen Aff. ¶ 6, there is no evidence from which a reasonable jury could find that Ball actually knew of and disregarded an excessive risk to Allen's health or safety. Jackson, 775 F.3d at 178; see also Pledger v. Lynch, 5 F.4th 511, 524 (4th Cir. 2021) (explaining that the subjective prong requires an inmate to show that the defendant "had actual knowledge of [his] serious medical needs and the related risks, but nevertheless disregarded them") (internal quotation marks and citation omitted).

It is undisputed that Ball was not on duty at the prison on June 18, 19, or 20, 2021, and that she did not receive any communications from anyone regarding Allen on any of those dates, other than the initial call from Compton advising her of Allen's return from VCU and requesting that she order pain medication for him. The record reflects that when Compton

---

[2] Ball's affidavit indicates that she "did not make any decisions regarding the security placement of Mr. Allen" in the isolation cell and that she only ordered that he remain in the infirmary. Ball Aff. ¶ 9. Likewise, after speaking with Ball, Compton noted in Allen's medical chart that Ball had ordered Tylenol #3 and that Allen "must stay in medical to receive [the] medication." Def.'s Ex. 2 at 3.

administered the first dose of Tylenol #3 ordered by Ball, Allen complained that he could not adequately support his neck in the isolation cell, and he requested a pillow for his neck. Although Allen alleges that "security officers refused" his request for a pillow, Allen Aff. ¶ 6, there is no evidence that Ball was made aware of that decision. Likewise, while Allen asserts that he "continued to complain of . . . being unable to support [his] neck . . . throughout the weekend," there is no evidence that any members of the medical staff relayed those continuing complaints to Ball while she was off duty. Thus, even if Allen remained in the isolation cell as a result of Ball's initial orders, no reasonable jury could find that Ball "actually kn[ew] of and disregard[ed] an objectively serious condition, medical need, or risk of harm." Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). Because there is insufficient evidence to satisfy the subjective element of deliberate indifference, Ball is entitled to summary judgment.

### Conclusion

For the reasons set forth above, Ball's motion for summary judgment, ECF No. 32, is **GRANTED**. An appropriate order will be entered.

Entered: September 22, 2023

Digitally signed by Michael F.
Urbanski      Chief U.S. District
Judge
Date: 2023.09.22 16:42:46 -04'00'

Michael F. Urbanski
Chief United States District Judge