CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
September 25, 2024
LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
         DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **KARSTEN O. ALLEN,**     ) | |
|     **Plaintiff,**          ) | Case No. 7:22-cv-00351 |
|                             ) | |
| **v.**                               ) | |
|                             ) | By: Michael F. Urbanski |
| **SGT. WIDENER, et al.,**       ) | Senior United States District Judge |
|     **Defendants.**        ) | |

## MEMORANDUM OPINION

Karsten O. Allen, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983. Allen claims that the remaining defendants, Sergeant Widener and Officer Rose, violated the Eighth Amendment by acting with deliberate indifference to a serious medical need. The case is presently before the court on the defendants' motion for summary judgment. ECF No. 55. For the reasons set forth below, the motion is **DENIED**.

### Factual Background

The following summary of the evidence is taken from the parties' sworn statements and accompanying exhibits. The facts are presented in the light most favorable to Allen, the nonmoving party on summary judgment. See Ray v. Roane, 93 F.4th 651, 655 (4th Cir. 2024) ("In considering a motion for summary judgment, a district court must view the evidence in the light most favorable to the non-movant . . . and draw all reasonable inferences in [his] favor.").

Allen is an inmate in the custody of the Virginia Department of Corrections (VDOC). This action arises from events that occurred while Allen was assigned to Keen Mountain Correctional Center (Keen Mountain) in Oakwood, Virginia.

At some point after being transferred to Keen Mountain, Allen began experiencing severe pain and numbness in his shoulder and arm. Verified Compl. ¶ 12, ECF No. 1. On June 7, 2021, prison medical staff were directed to arrange for Allen to go to VCU Medical Center (VCU) in Richmond, Virginia, for surgery.[1] Shelton Aff. Encl. A, ECF No. 56-4 at 10. A medical staff member noted that an anterior cervical discectomy and fusion (ACDF) of the C5-C6 vertebrae had been scheduled for June 17, 2021. Id.

On the morning of June 17, 2021, Allen was called for transport. Verified Compl. ¶ 14. Sergeant Widener and Officer Rose were the officers responsible for transporting Allen to VCU. Id. VCU is approximately five and a half hours from Keen Mountain. Rose Aff. ¶ 4, ECF No. 56-3.

Allen underwent the two-hour surgical procedure that same day. Compl. ¶ 16. Following the procedure, Allen was admitted to the hospital for observation, and he remained in recovery overnight. Id. While in the hospital, Allen was prescribed OxyContin to be taken every four hours for pain relief, as well as an over-the-counter pain reliever. Id.

At approximately 4:00 p.m. on June 18, 2021, Widener and Rose returned to the recovery room to prepare Allen to be transported back to Keen Mountain. Id. ¶ 17. Allen recalls the officers having a conversation with a nurse regarding his prescription pain medication, during which the officers indicated that they would not be able to administer any type of medication. Id. Allen was not permitted to take the medication with him, and he had

---

[1] VCU Medical Center was formerly known as the Medical College of Virginia (MCV). The defendants' affidavits refer to the hospital by its former name.

"not yet reached 4 hours between narcotic takes." Id. Nonetheless, the officers proceeded to make the return trip to Keen Mountain. Id.

The parties provide different accounts of what transpired after they left the hospital. According to Allen, the effects of the pain medication faded approximately two hours into the trip, and his pain steadily increased. Id. ¶ 18. Allen asserts that the pain became "so intense . . . that he felt he could not make it back to the institution in his condition" and that he "practically begged the officers to get pain medication for him." Id. When the officers responded that they were not authorized to administer medication, Allen "urged the officers to call a DOC official to inform of an emergency," but they refused to do so. Id. Over the next several hours, Allen "repeatedly pled for help" as he was "forced to endure the pain" from neck surgery while traveling in a vehicle with his "hands restrained to his waist." Id. ¶ 19. Allen alleges that he "experienced bouts of lightheadedness teetering on the brink of blacking out" and that his experience during the final hours of the trip "amounted to torture." Id.

Although Rose does not recall Allen, Rose Aff. ¶ 5, ECF No. 56-3, Widener's affidavit indicates that he and Rose were responsible for transporting Allen to and from VCU. See Widener Aff. ¶¶ 5–6, ECF No. 66. Widener asserts that he checked on Allen "every 30 minutes to an hour" during the drive back to Keen Mountain and that Allen "replied that he was okay." Id. ¶ 7. According to Widener, Allen reported that his neck was "starting to hurt" when they were only about 30 minutes away from Keen Mountain. Id. Widener maintains that Allen "never complained that he was having severe and excruciating pain." Id. Widener and Rose also deny having any conversation with VCU staff regarding Allen's condition or treatment.

Id.; see also Rose Aff. ¶ 11 ("As a transportation officer, I did not have any conversations with medical staff about an inmate's medical condition or his medications.").

The parties also provide conflicting accounts of what transpired after they arrived at Keen Mountain. Allen asserts that Widener and Rose radioed in to announce their return before arriving at the prison and that they "then pulled into the parking lot next to their personal vehicles and appeared to be situating themselves to get off of their shift." Verified Compl. ¶ 20. At that point, according to Allen, a group of officers joined Widener and Rose in the parking area, and the officers began discussing "trivial matters such as plans for the weekend." Id. Allen "protested that he needed medical attention" and "frustratingly explained" that his "neck was throbbing in pain." Id. Allen asserts that his request for medical attention was ignored and that he was forced to sit in the parking lot for up to 45 additional minutes while the officers chatted with one another. Id.

Rose and Allen indicate that they do not recall "any delay in entry to the facility." Rose Aff. ¶ 13; see also Widener Aff. ¶ 9 ("I do not recall that we had to wait to bring the van into the sallyport."). Although both defendants indicate that they "would have had to wait to enter the sally port . . . if count was in progress," id. (emphasis added), their affidavits are not accompanied by any records confirming whether count was being conducted at the time they arrived at Keen Mountain. See Rose Aff. ¶ 14 ("Because I am no longer with Keen Mountain, I cannot access records to determine if we arrived at the facility while count was taking place.").

VDOC medical records indicate that Allen "returned to medical" at 11:30 p.m. on June 18, 2021. Shelton Aff. Encl. A, ECF No. 56-4 at 7 (emphasis added). Approximately 45 minutes later, a nurse noted that Allen was "holding [his] neck" and "demand[ing] that he

4

receive medical care and pain medication." Id. at 6–7. A nurse practitioner ordered Tylenol No. 3 for Allen, which was to be taken every six hours for pain as needed for three days.[2] Id. at 6. The medical records indicate that Allen received one dose of the medication at 12:30 a.m. on June 19, 2021. Id. Later that day, after receiving additional doses, Allen rated his pain as a 5 out of 10. Id. at 5; see also Shelton Aff. ¶¶ 6–7.

On June 28, 2021, Allen submitted a written complaint against Widener and Rose in which he alleged that he "suffered extreme pain" while being transported back to Keen Mountain following surgery. Harr Aff. Encl. B, ECF No. 56-1 at 21. The written complaint was logged as KMCC-21-INF-01249, id., and Allen "received a receipt" after submitting the complaint, Allen Aff. ¶ 2, ECF No. 60-3.

Although the record reflects that Major Owens responded to the complaint on July 1, 2021, Harr Aff. Encl. B, Allen asserts that he had still not received a copy of the response as of July 15, 2021, Allen Aff. ¶ 3. Consequently, he "wrote a regular grievance on the same issue, . . . attached the informal receipt to it[,] and submitted both documents to the grievance office." Id.

As of July 26, 2021, Allen had not received a response to the regular grievance. Pl.'s Sworn Mem. Opp'n Mot. Summ. J. 3, ECF No. 60-1. Consequently, Allen "submitted a request to the grievance coordinator requesting copies of the informal and regular grievance submissions." Id. Allen asserts that "[t]his request was ignored." Id. He then "rewrote the

---

[2] Tylenol No. 3 is a prescription pain medication consisting of acetaminophen (Tylenol) and codeine. See Acetaminophen and Codeine, U.S. National Library of Medicine: Medline Plus, https://medlineplus.gov/druginfo/meds/a601005.html (last visited Sept. 24, 2024).

grievance, along with a letter to the Regional Ombudsman . . . explaining the institution's refusal to respond," and submitted both documents to the VDOC's Western Regional Office. Allen Aff. ¶ 4. Allen included the following note on the grievance: "I attempted to submit this grievance to the Institution but the Institutional Grievance Coordinator refuses to accept it. The written complaint was identified as KMCC-21-INF-01249." Pl.'s Sworn Mem. Opp'n Mot. Summ. J. Ex. 1, ECF No. 60-2 at 1. The grievance was marked received by the Regional Ombudsman on August 2, 2021, and Allen was instructed to refile the grievance at Keen Mountain. Id.

Allen asserts that on August 10, 2021, he "rewrote another regular grievance on this issue and attached a request form explaining [the Regional Ombudsman's] instructions to refile." Allen Aff. ¶ 5. When Allen filed this action nearly a year later, he had not received a response to either regular grievance. Id.

## **Procedural History**

Allen filed this action under 42 U.S.C. § 1983 against Widener, Rose, and other prison officials. Allen claims that Widener and Rose acted with deliberate indifference to a serious medical need in violation of the Eighth Amendment. The court previously granted in part and denied in part a motion to dismiss filed by Widener, Rose, and other defendants, leaving only the Eighth Amendment claim asserted against Widener and Rose.

Widener and Rose have since moved for summary judgment on two grounds. They first argue that Allen's "claim is barred because he failed to exhaust his administrative remedies prior to filing suit." Defs.' Mem. Supp. Mot. Summ. J. 11, ECF No. 56. They also argue, based primarily on their own affidavits, that they were "not deliberately indifferent" to any serious

6

medical need. Id. at 14. The motion for summary judgment has been fully briefed and is ripe for decision.

## Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, "[t]he court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." Shaw v. Foreman, 59 F.4th 121, 129 (4th Cir. 2023). The court "may not weigh the evidence or make credibility determinations." Harris v. Pittman, 927 F.3d 266, 272 (4th Cir. 2019) (internal quotation marks omitted). "To survive summary judgment, 'there must be evidence on which the jury could reasonably find for the [nonmovant].'" Lee v. Town of Seaboard, 863 F.3d 323, 327 (4th Cir. 2017) (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

"As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters in the complaint, but must, by factual affidavit or the like, respond to the motion." Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). "However, it is well established that a <u>verified</u> complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021) (emphasis in original) (internal quotation marks omitted). Similarly, "[s]elf-serving affidavits offered by the non-movant can be used as evidence to defeat summary judgment, at least when they are based on personal knowledge or firsthand experience." Jones v. Solomon, 90 F.4th 198, 206–07 (4th

7

Cir. 2024) (internal quotation marks and citation omitted).

## Discussion

### I. The Defendants' Exhaustion Defense

Widener and Rose first argue that the Eighth Amendment claim asserted against them is barred by the Prison Litigation Reform Act (PLRA) because Allen did not exhaust his administrative remedies prior to filing suit. The PLRA provides that "[n]o action shall be brought" in federal court by an inmate challenging prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," Porter v. Nussle, 534 U.S. 516, 532 (2002), and that "proper exhaustion" is required, which includes "compliance with an agency's deadlines and other critical procedure rules," Woodford v. Ngo, 548 U.S. 81, 90 (2006).

Although the PLRA's exhaustion requirement is "strict," it "does not operate as an absolute bar to prison litigation in federal court." Griffin v. Bryant, 56 F.4th 328, 335 (4th Cir. 2022). Instead, "it sets forth a built-in exception, specifying that a prisoner need not exhaust remedies if they are not available." Id. (internal quotation marks omitted) (citing Ross v. Blake, 578 U.S. 632, 635–36 (2016)). In other words, if "an administrative remedy, although officially on the books, is not capable of use to obtain relief," the exhaustion requirement "does not come into play." Ross, 578 U.S. at 643. The Supreme Court has identified at least three scenarios that satisfy this standard: (1) where the administrative remedy "operates as a simple dead end," with prison officials "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque" that it is "practically

8

. . . incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) where "prison administrators thwart inmates from taking advantage of a grievance procedure through machination, misrepresentation, or intimidation." Id. at 643–44; see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.").

### A. The Applicable Grievance Process

VDOC Operating Procedure ("OP") 866.1 sets forth the grievance process appliable to most issues raised by inmates incarcerated in VDOC facilities. Grievable issues include matters relating to conditions of care and actions of staff that affect an inmate personally. OP 866.1(III)(B)(1), eff. Jan. 1, 2021, Harr Aff. Encl. A, ECF No. 56-1.

Pursuant to OP 866.1, inmates must first attempt to resolve an issue informally before filing a regular grievance. If a verbal complaint is not resolved to the satisfaction of an inmate, the inmate may submit a written complaint. OP 866.1(I)(D). The written complaint "must be received by designated staff within 15 days of the original incident or discovery of the incident," and the designated staff member then has 15 days to provide a response. Id. If an inmate does not receive a timely response to a written complaint or if the inmate is dissatisfied with the response, the inmate may file a regular grievance. Id. The inmate "must deliver the original [regular grievance] with attached document(s) to the Grievance Mailbox within 30 days from the original incident or discovery of the incident" unless "[t]he delay is beyond the offender's control." OP 866.1(III)(B)(5). In such circumstance, an inmate "has five days to file their grievance once the reason for delay is no longer valid." Id.

If a regular grievance satisfies the intake criteria, "staff must accept the grievance and log it into VACORIS using the received date." OP 866.1(III)(C)(4). When a regular grievance is accepted and logged into VACORIS, the "Facility Unit Head" is responsible for providing a Level I response within 30 calendar days. OP 866.1(III)(F)(1)–(2). If an inmate is dissatisfied with the response, the inmate may appeal to Level II, where the appeal is reviewed by the Regional Administrator or another designated official. OP 866.1(IV)(C)(1). OP 866.1 explains that an inmate satisfies the requirements for exhausting administrative remedies only when a regular grievance "has been accepted into the grievance process and appealed, without satisfactory resolution of the issue." OP 866.1(V)(B).

### B. Allen's Exhaustion Efforts

In support of the pending motion for summary judgment, the defendants submitted an affidavit executed by H. Harr, the current grievance coordinator at Keen Mountain. See Harr Aff., ECF No. 27-1, at 1–3. According to the affidavit, "no Regular Grievance was received from Allen for the current claims and no regular grievance was accepted for intake and appealed to the highest level of review." Harr. Aff. ¶ 11. Consequently, Widener and Rose argue that Allen's claim against them is barred by the PLRA for failure to exhaust administrative remedies.

In response, Allen argues that the motion for summary judgment should be denied because the former grievance coordinator hindered his ability to exhaust his administrative remedies. This argument is supported by sworn statements in Allen's memorandum in opposition to the motion for summary judgment and his attached affidavit. As indicated above, Allen asserts that he submitted a regular grievance on July 15, 2021, after not receiving

10

a timely response to his written complaint against Widener and Rose. After nearly two weeks passed without a response to the regular grievance, Allen rewrote the grievance and forwarded it to the Regional Ombudsman, who returned the grievance and directed Allen to refile it at Keen Mountain. Allen alleges that he rewrote and resubmitted the grievance in accordance with the Regional Ombudsman's instructions. Nonetheless, according to Allen, the grievance coordinator "again ignored this submission." Pl.'s Sworn Mem. Opp'n Mot. Summ. J. 4. At the time Allen filed this action, nearly a year had passed, and he had still not received a response to the regular grievances that he had submitted against Widener and Rose.

Viewing the record in the light most favorable to Allen, the court concludes that a genuine dispute of material fact exists as to whether the VDOC's grievance process was actually "available" to him during the time period at issue. 42 U.S.C. § 1997e(a). As previously noted, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore, 517 F.3d at 725. "Thus, 'when prison officials prevent inmates from using the administrative process . . . , the process that exists on paper becomes unavailable in reality.'" Hill v. O'Brien, 387 F. App'x 396, 400 (4th Cir. 2010) (quoting Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006)). Here, Allen's sworn statements indicate that the former grievance coordinator thwarted his ability to properly exhaust his administrative remedies by refusing to process and respond to his regular grievances. Based on the current record, Widener and Rose are not entitled to summary judgment on their exhaustion defense. See, e.g., Edwards v. Melendez, 832 F. App'x 50, 53 (2d Cir. 2020) ("Edwards has repeatedly asserted (including in his sworn amended complaint) that the defendants refused to process his timely grievances despite following the

11

grievance procedure—a contention that the defendants did not address—indicating that administrative remedies were not available to him. The district court thus correctly held that the defendants were not entitled to summary judgment . . . due to lack of exhaustion."); Hill, 387 F. App'x at 401 (concluding that summary judgment was inappropriate on the issue of exhaustion and collecting cases finding administrative remedies to be unavailable when prison officials failed to respond to inmate grievances).

## II. The Merits of Allen's Eighth Amendment Claim

Widener and Rose also argue that they are entitled to summary judgment on the merits of Allen's Eighth Amendment claim against them. The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. "'A prison official's deliberate indifference to an inmate's serious medical needs' violates that provision." Phoenix v. Amonette, 95 F.4th 852, 859 (4th Cir. 2024) (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)).

"A successful medical deliberate indifference claim has 'two components, objective and subjective.'" Id. (quoting Jackson, 775 F.3d at 178). The objective component is satisfied by a "serious medical condition," and "a medical condition is serious when it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019) (internal quotation marks omitted). At this stage of the proceedings, Widener and Rose do not appear to dispute that severe pain following neck surgery, for which an inmate is prescribed pain medication, qualifies as a serious medical condition. See Krell v. Braightmeyer, 828 F. App'x 155, 159 (4th Cir. 2020) (rejecting the defendants' argument that "mere

12

complaints of pain were insufficient to establish a constitutional violation" and holding that evidence that officers failed to provide medical care for a detainee's severe pain was "enough to prevail on a claim of deliberate indifference"); Melton v. Abston, 841 F.3d 1207, 1222 (11th Cir. 2016) (recognizing that severe pain can constitute a serious medical need depending on the circumstances); Al-Turki v. Robinson, 762 F.3d 1188, 1194 (10th Cir. 2014) (holding that the plaintiff's "several hours of untreated severe pain" were "sufficient to satisfy the objective prong of the deliberate indifference test").

The defendants argue that Allen is unable to satisfy the subjective component of his Eighth Amendment claim. "The subjective component is satisfied by proof of a defendant's deliberate indifference." Gordon, 937 F.3d at 357. "The Supreme Court has explained that 'deliberate indifference entails something more than mere negligence,' but the standard 'is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994)). "The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally denying or delaying medical care, or intentionally interfering with prescribed medical care." Formica v. Aylor, 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis omitted) (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)); see also Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009) (emphasizing that "mere delay or interference [with medical treatment] can be sufficient to constitute a violation of the Eighth Amendment"). "In the context of a claim related to the denial of medical treatment or a delay in providing such treatment, 'a defendant acts with deliberate indifference if he had actual knowledge of the plaintiff's serious medical needs and

13

related risks, but nevertheless disregarded them.'" Griffin v. Mortier, 837 F. App'x 166, 170 (4th Cir. 2020) (quoting Gordon, 937 F.3d at 357). A plaintiff can satisfy the subjective knowledge requirement through direct evidence of a defendant's actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence that the defendant knew of a substantial risk from the very fact that the risk was obvious. Gordon, 937 F.3d at 357.

Viewing the evidence in the light most favorable to Allen, the court concludes that a reasonable jury could find that Widener and Rose acted with deliberate indifference by intentionally delaying treatment for Allen's severe pain. Courts have held that intentionally delaying medical treatment "may constitute deliberate indifference if the delay . . . unnecessarily prolonged an inmate's pain." Sharpe v. S.C. Dep't of Corr., 621 F. App'x 732, 734 (4th Cir. 2015) (quoting McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)). Courts have also recognized that "even brief, unexplained delays in treatment may constitute deliberate indifference." Lewis v. McLean, 864 F.3d 556, 564 (7th Cir. 2017) (internal quotation marks omitted) (collecting cases); see also Mata v. Saiz, 427 F.3d 745, 755 (10th Cir. 2005) ("A prisoner may satisfy the subjective component by showing that defendants' delay in providing treatment caused . . . unnecessary pain . . . . Even a brief delay may be unconstitutional."). For instance, in Lewis, the Seventh Circuit concluded that a reasonable jury could find that two correctional defendants exhibited deliberate indifference by delaying an inmate's treatment for more than an hour despite knowing that he was experiencing severe pain. Lewis, 864 F.3d at 563; see also McCowan v. Morales, 945 F.3d 1276, 1292 (10th Cir. 2019) (holding that a plaintiff's evidence was "sufficient to meet the subjective prong of the

14

deliberate indifference test" where the plaintiff attested that he "repeatedly told the [defendant] that he was in excruciating shoulder pain—yet [the defendant] disregarded all of that information in delaying [the plaintiff] medical care for approximately two hours until he was sent to the detention center").

Here, Allen's sworn statements indicate that Widener and Rose knew that he had been prescribed pain medication after undergoing surgery at VCU; that he suffered increasingly severe pain on the nearly six-hour trip back to Keen Mountain as the medication wore off; that Widener and Rose intentionally disregarded his complaints of pain and requests for medical attention; that they continued to do so even after they returned to the prison and chatted with other officers in the parking lot for up to 45 minutes; and that the delay in obtaining medical attention unnecessarily prolonged Allen's suffering. While Widener and Rose deny Allen's allegations and argue that they are "baseless" and "unsubstantiated," Defs.' Mem. Supp. Mot. Summ. J. 16–17, it is well settled that a nonmoving party's sworn statements based on personal knowledge need not be corroborated to defeat summary judgment. See Lovett v. Cracker Barrel Old Country Store, Inc., 700 F. App'x 209, 212 (4th Cir. 2017) ("[C]ourts have long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is self-serving. Rather, if such an affidavit is based on personal knowledge or firsthand experience, such testimony can be evidence of disputed material facts.") (quoting Berry v. Chi. Transit Auth., 618 F.3d 688, 691 (7th Cir. 2010)); see also Jones, 90 F.4th at 207 (emphasizing that "[t]he same is true for verified complaints"). Additionally, the record contains no evidence indicating that count was being conducted at the time the parties arrived back at Keen

15

Mountain. Nor does the record "affirmatively demonstrate[] that Allen arrived at Keen Mountain at 11:30pm and was evaluated by medical and received pain medication within an hour." Defs.' Mem. Supp. Mot. Summ. J. 18. Although Allen's medical chart indicates that he "returned to medical" at 11:30 p.m. on June 18, 2021, Shelton Aff. Encl. A, ECF No. 56-4 at 7 (emphasis added), the exhibit provides no indication as to what time the transport vehicle arrived at the prison. Thus, it does not refute Allen's sworn statement that he was forced to wait in the parking lot for as long as 45 minutes before being taken inside the facility.

"It is axiomatic that in deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the nonmovant—here, [Allen]—and to draw all reasonable inferences in his favor." Harris, 927 F.3d at 272. Importantly, "[a] district court may not weigh the evidence or make credibility determinations, and is not in a position to disregard stories that seem hard to believe." Id. (internal quotation marks and citations omitted). Instead, the court is required to construe the record evidence in the light most favorable to the nonmoving party, even if it does not believe that the nonmoving party ultimately will prevail at trial. Id.

Applying the proper standard of review on summary judgment, the court concludes that the defendants' motion must be denied. In short, Allen's sworn statements are sufficient to create a genuine factual dispute as to whether Widener and Rose acted with deliberate indifference to a serious medical need. This factual dispute and any necessary credibility determinations must be resolved by a jury; they cannot be resolved by the court on summary judgment. See Raynor v. Pugh, 817 F.3d 123, 130 (4th Cir. 2016) ("[W]here affidavits present

conflicting versions of the facts which require credibility determinations, summary judgment cannot lie.") (internal quotation marks omitted).

## Conclusion

For the reasons stated, the motion for summary judgment filed by Widener and Rose, ECF No. 55, is **DENIED**. An appropriate order will be entered.

Entered: September 25, 2024

Mike Urbanski
Senior U.S.District Judge
2024.09.25 09:50:43
-04'00'

Michael F. Urbanski
Senior United States District Judge